## JOHNSON v. CITY OF ROCK HILL.

1. FINDING OF FACT—CHILLING BIDS—FRAUD.—No evidence here to sustain allegations of chilling bids for erection of water works, or of fraud in letting out the contract.

2. ULTRA VIRES—CITY OFFICERS—WATER WORKS.—It is not *ultra vires* for a city council after submitting to qualified voters a plan for erection of water works, to change the plans in mere matters of detail with the contractors without submitting such changes to the voters.

Before GARY, J., York, April, 1899. Affirmed.

Action by J. B. Johnson, Myron H. Sanders, and J. J. Hagins against City of Rock Hill, the Mayor and Aldermen thereof, and The Rock Hill Water, Light and Power Co.

The allegations upon which the action is rested are embraced in the 4th paragraph:

"4. That the said city of Rock Hill was and is wholly without authority to grant the said supposed franchise or any part thereof; but even if it had such authority, it was only upon the provision that question of the granting thereof should first be submitted to the qualified voters of the said city, and approved by the majority of the persons so voting, and this the plaintiffs charge was never done; but even if it had been done, the plaintiffs further charge that the said city and its then city council adopted a resolution that there should be thirty days notice in *The Rock Hill Herald,* a newspaper published in said city, *The Manufacturers Record,* and *The Engineers News,* of the purpose of the said city to grant said franchise, the grant to be to the lowest bidder, upon specifications to be formulated and submitted by the said city and its then city council; and that the notice as published recited that said specifications were then at the first insertion thereof on file in the city council's office, and that a copy of said specifications would be furnished to parties desiring to bid, upon application. That no such specifications were ever on file, and that although a number of *bona fide* bidders made repeated applications to see said specifications and to be furnished with copies of the same, they were never permitted to see, or obtain copies thereof, and that *bona fide* bidding was thus effectually chilled and cut off. That the provisions of the franchise so attempted to be granted to the defendant, the said Rock Hill Water, Light and Power Company, does not conform to the plans and specifications upon which bids were required to be made, in that the required capacity of the wells has been reduced from a minimum of 450,000 gallons per day to 150,000 gallons per day; the power of the pumping machinery has been reduced more than one-half, and various other changes have been made, so that the water system authorized and permitted by said supposed franchise is greatly inadequate and inefficient for the reasonable wants of said city of Rock Hill; and that each of said facts mentioned

in this paragraph was known to said supposed grantee at and before the making of the grant, and so in equity and good conscience the said supposed grant should not be allowed to stand. That the plaintiffs are remediless in the premises save by the aid of this honorable Court. Wherefore, the plaintiffs pray judgment against the defendants that the said supposed grant be adjudged null and void, and delivered up to be cancelled; and that the defendants, and each of them, be enjoined from further proceeding in the accomplishment of their said unlawful enterprise under the same."

The Circuit decree, omitting formal parts, is as follows:

"It will be seen from the answer of the city of Rock Hill, that the right to grant the franchise is expressly given under section 8 of an act of the General Assembly of the State of South Carolina, entitled 'An act to incorporate the city of Rock Hill,' approved December 24th, 1892, which is as follows: 'Sec. 8. The city council of said city shall have full power and authority to purchase and operate, under such rules, regulations and orders as they may by ordinance adopt, water and electric works in or near said city, for the use and benefit of said city and its citizens; also, to purchase, own and operate apparatus for generating either electricity or gas for the use and benefit of said city and its citizens, or to contract for erection of plants either for water works or lighting purposes, or both, for the uses of said city, and to supply the citizens thereof; to grant a franchise or franchises for said purposes, as well as for the construction and operation of a street railway within said city, to any private corporation or corporations, for a term of years, as may be deemed to be to the best interest of said city, with power to make such by-laws, rules and ordinances in reference thereto as shall be deemed necessary for the regulation and proper conduct of the same, either for public or private use by the citizens of said city: *Provided,* That no such franchise shall be granted until the question of granting thereof has first been submitted to the qualified voters of said city and approved by a majority

of such persons voting at such election.' It appears from this act, that full power is expressly conferred upon the city council, not only to purchase and operate, under such rules, regulations and orders as they may by ordinance adopt, water and electric works in or near said city, for the use and benefit of said city and its citizens, but full power and authority is also given to contract for the erection of plants either for water works or lighting purposes, or both, and in addition the authority is expressly conferred upon them to grant a franchise or franchises for said purpose.

"At this point let us look into the causes for which this injunction is asked. They may be classified as follows: 1st. That the city was without authority to grant the franchise, because the question of granting the same had not been submitted to the qualified voters of the city, and approved by a majority of the persons so voting. 2d. Because the resolution adopted by the city council calling in bids had not been complied with, the specifications not being on file for inspection as advertised, and could not be had by *bona fide* bidders, and the bidding was thus chilled. 3d. That the provisions of the franchise granted do not conform to the plans and specifications upon which bids were required to be made, and changes have been made. 4th. That the water system authorized and contracted for is inadequate and inefficient for the wants and necessities of the city. Do these allegations, singly or collectively, present a proper case for the interference of a court of equity? The first ground contended for by the plaintiffs, is that not only the question whether or not the city should grant a franchise of its water supply to a private corporation, but it is also insisted that in addition the whole scheme and plan of plant, etc., should also have been submitted to such qualified voters. I do not so construe the proviso of section 8. The proviso is in these words: '*Provided,* That no such franchise shall be granted until the question of granting thereof has first been submitted to the qualified voters of said city and approved by a majority of such persons voting at such election.' I take it

that the General Assembly only intended that the question of granting the franchise should be submitted, leaving to the sound discretion of the city council to contract for such a system as in its judgment would be for the best interest of the city and its citizens. To construe the proviso otherwise would be putting a strained and unnatural construction on its provisions. I am unable, therefore, to see any force in the first ground.

"The second is: Because the resolution adopted by the city council, calling in bids, had not been complied with— the specifications not being on file for inspection as advertised, and could not be had by *bona fide* bidders, and the bidding was thus chilled. By an inspection of section 8, it will be seen that the city council are clothed with 'full power and authority,' not only to purchase and operate a system of water works, to contract for the erection of plants, either for water works or lighting purposes, but they are, in addition, clothed with authority 'to grant a franchise or franchises for said purposes to any private corporation or corporations for a term of years as may be deemed to be to the best interest of said city;' the only limitation or restriction being in the proviso in said section just quoted, which is that no franchise shall be granted until the question of *granting* thereof has first been submitted to the qualified voters, etc. Under this statute, it was not made the duty of the city council to advertise and call for bids. It is true, the city council did pass a resolution advertising for bids after the election had been ordered in favor of a system of water works, but in the advertisement the city council expressly reserved the right to reject all bids. Mr. Spelling, in his work on Extraordinary Relief, vol. 1, at sec. 687, uses this language: 'The general rule of non-interference with the exercise of discretionary powers legally conferred applies with exceptional force and appropriateness to municipal bodies having extensive and important trusts of a public character confided to them and being generally vested with important legislative powers. And it is a well settled equitable doctrine that the

domain of discretionary powers conferred upon municipal bodies will in no case be invaded by the courts. This rule is very strictly adhered to with respect to the legislative powers conferred by statute. So long as the municipal body does not transcend the scope of its authority to enact ordinances, or violate any of the limitations to the exercise of such power, it will not, in the absence of fraud, be interfered with by injunction. Nor will courts, when it is found that municipal legislative bodies have acted in good faith and within the scope of the authority conferred upon them, investigate as to the wisdom or expediency of their action, or interfere because in the light of circumstances the Court would have acted differently.' The same author, at section 689, states the rule to be thus: 'The rule that courts will not interfere to restrain or control the exercise of discretionary powers also has special application in cases where injunction is sought to restrain the construction of works of public improvement, such as streets, sewers, bridges and public buildings; and where such matters are by law intrusted to municipal bodies, equity will not revise or control the exercise of discretionary powers as to the terms upon which, or the manner in which, the improvements shall be made. The general rule is that a court of equity will not assume to judge of the expediency and wisdom of laws conferring authority upon municipal officers and boards to make public improvements, where the latter are acting within the scope of their legal authority, however impolitic or oppressive may be the law under which they are acting. The remedy for grievances must be sought, not in the courts, but at the hands of the legislature. But in the absence of any allegation of fraud or illegality, equity will not interfere with city authorities, who are made the judges of the necessity for extending and opening streets, constructing bridges and the like.'

"Mr. High, in the third edition of his work on Injunctions, expresses the same idea: 'Sec. 1240. An important modification of the doctrine of equitable interference with the proceedings of municipal corporations is found in the

limitations and restrictions which are placed upon the juris-
diction, in all cases where it is sought to interfere with or
control the judgment or discretion of municipal bodies upon
matters properly entrusted to them by law. A municipal
corporation being a political body, clothed with certain legis-
lative and discretionary powers, equity is ordinarily averse
to interfering by injunction with the exercise of those pow-
ers at the suit of a private citizen. And no principle of
equity jurisprudence is better established than that courts
of equity will not sit in review of the proceedings of subor-
dinate political or municipal tribunals, and that where mat-
ters are left to the discretion of such bodies, the exercise of
that discretion in good faith is conclusive, and will not, in
the absence of fraud, be disturbed. And the fact that the
Court would have exercised the discretion in a different man-
ner will not warrant it in departing from the rule. Thus, a
mere difference of opinion between a court of equity and a
municipal corporation as to the proper rate of ferriage to be
charged, where the corporation is by its charter vested with
the control of certain ferries, and, as incidental thereto, the
right of establishing a tariff of prices, will not justify the
Court in granting an injunction. * * * In such a case,
equity is averse to interfering by injunction, since the judi-
cial authority has not power to interfere with other depart-
ments of the government while acting within the scope of
their lawful authority. * * * And where municipal officers
are proceeding in the exercise of an unquestioned authority
with the construction of a work of public convenience, they
will not be enjoined at the suit of a citizen seeking to re-
strain the work upon the particular plan proposed, upon the
ground that another and different plan is superior. * * *
Sec. 1251. It not unfrequently happens that municipal offi-
cers who are empowered by law to construct works of public
improvement, such as public buildings, roads and bridges,
are restricted by the terms of their charter, or by other con-
trolling legislation, to the letting of contracts for such work
to the lowest responsible bidder, after due advertisement, as

required by law. And the rule may be regarded as well settled that in all cases where the power to let such contracts is dependent upon conditions and restrictions of this nature, a disregard of, or failure to comply with, the necessary conditions, constitutes sufficient ground for relief by injunction against the construction of the proposed improvement, or awarding a contract therefor. In such cases, a distinction is properly drawn between the exercise of an unquestioned power over the subject matter, within whose limits. the discretion of municipal bodies will not be interfered with, and an absence or excess of power rendering the action of municipality void. Where, therefore, municipal officers are required by law to let contracts for the construction of roads or bridges to the lowest competent bidder, they may be enjoined from constructing such works without first advertising for bids and letting the contract to the lowest bidder accordingly. And where the charter of a municipal corporation prohibits the making of contracts for works of public improvement, except after public advertisement of the specifications and proposals for the work in question, a disregard of this requirement of the charter in awarding a contract for such work affords sufficient ground for an injunction at the suit of taxpayers, since in such case the municipal authorities are proceeding in excess of their powers, and their contract is, therefore, utterly void. * * * Sec. 1252. * * * And when a board of municipal officers are entrusted with unlimited discretion in awarding contracts for public works, and are not required to award them to the lowest bidder, when they have advertised for contracts and have used their best judgment and discretion in the matter, they will not be enjoined by the lowest bidder from contracting with a higher bidder. Sec. 1256. * * * So when municipal officers, claiming to act under legal authority, assert the right to perform a particular duty in connection with municipal affairs, the only question presented by the bill seeking to enjoin them being the legal question of their authority, and not irreparable injury is shown to result from their assertion of author-

ity, an injunction will be denied, and the parties aggrieved
will be left to determine the question of authority by pro-
ceeding in *quo warranto.*' * * *

"It was perfectly competent for the General Assembly to
delegate the authority to the city council of Rock Hill to
contract for the erection of a system of water works and to
grant the franchise. In the recent case of *Covington* v.
*Kentucky,* vol. 173, U. S. Court Reports, 231, it was held
that, 'Subject to constitutional limitations presently to be
noticed, the power of the legislature over such (municipal)
corporations is supreme and transcendant; it may, where
there is no constitutional inhibition, erect, change, divide
and even abolish them, at pleasure, as it deems the public
good to require.' Citing I. Dillon's Munic. Cor., 4th ed., p.
93, sec. 54. * * *

"The same reasoning that is advanced in passing upon the
second ground, may with equal propriety be applied to the
two remaining grounds. It does not, for the foregoing rea-
sons, appear to me that the plaintiffs have made out a proper
showing for the interference by this Court in the matter
complained for an injunction.

"It is proper that I should state, before concluding this
decree, that upon the hearing, I was impressed with the idea
that the act of the General Assembly conferring the author-
ity upon the city council of Rock Hill to grant the franchise
complained of, was unconstitutional, in that the authority to
grant such franchise limited the city council in granting the
same to any private corporation or corporations. I was im-
pressed that this was class legislation. But since reading
the case of Covington *v.* Kentucky, above cited, and our own
case of Hagood *v.* Phosphate Co., reported in vol. 3, L. R.
A., I have abanded this idea.

"It is, for the foregoing reasons, ordered, that the injunc-
tion prayed for be refused and the complaint dismissed."

*Messrs. Witherspoon & Spencers,* for appellants (text-
book citations).

*Mr. Wm. J. Cherry,* for city of Rock Hill, contra, cites: *Exceptions too general:* 4 McC., 496; 16 S. C., 619; 18 S. C., 104; 20 S. C., 293; 22 S. C., 271. *Method of granting franchise left to discretion of city council, and cannot be disturbed:* 10 Rich., 502; 33 S. C., 64. *If statute does not require advertisement and letting to lowest bidder, it is not necessary:* 13 L. R. A., 648; 78 Ind., 1. *No constitutional inhibition against grant:* 3 L. R. A., 841.

*Mr. Jas. F. Hart,* for Water &c. Co., also contra, cites: *Burden on appellant to show error in finding below:* 55 S. C., 202. *Franchise could only be granted to corporation:* 21 Stat., 384. *Discretion of city council was absolute, and in absence of fraud, cannot be interfered with:* 50 Conn., 299; 5 Abb., 1; 79 Ind., 491.

April 16, 1900. The opinion of the Court was delivered by

MR. JUSTICE JONES. This action was brought by certain resident taxpayers of the city of Rock Hill, to vacate a franchise to construct and maintain water works granted by the city of Rock Hill to the Rock Hill Water, Light and Power Company, upon the grounds of *ultra vires* and fraud. The Circuit Court, holding that plaintiff failed to make a proper showing for judicial interference, dismissed the complaint. The decree of the Circuit Court is officially reported herewith, and reference may be had thereto for a full statement of the case, and the reasons for the Court's action.

I   We affirm the judgment. There was no evidence whatever to show any fraud. No *bona fide* bidding, under the resolutions adopted by the city council, was cut off and chilled, as alleged. Under sec. 8 of the act to incorporate the city of Rock Hill, 21 Stat., 374, only corporations were competent bidders, and so far as the evidence shows no corporation sought to bid, or bid, except the Rock Hill Water, Light and Power Company. It is true, during the first advertisement, Mr. W. B. Wilson, claiming to represent

what he stated was a North Carolina corporation, asked for plans and specifications, which were not furnished him for the reason that the architect had not completed them. By reason of this delay in the filing of the specification, the city council readvertised for thirty days, during which time the specifications were in the council chamber, accessible to all who asked for them. During the period of the second advertisement, Mr. Wilson was absent in Baltimore, and made no application for the specifications, and during this period all who asked for specifications received them, but no bid by any corporation was made except as stated by the defendant company. All others who made inquiries simply represented individuals or copartnerships, and so far as appears wanted to bid for construction and not for the franchise. This disposes of the exception relating to the matter of alleged chilling of the bidding.

As to the question of *ultra vires.* As clearly shown by the Circuit decree, section 8, referred to, confers on the city council of Rock Hill ample power to grant such franchise, upon submitting the question to the qualified voters of the city. This was done, and a majority of the voters sanctioned the grant. The fact that after such vote the city council, after consideration, made certain modifications of the specifications relating to the franchise, and then, without resubmitting such amendments to the voters, accepted the offer of the defendant company and adopted the ordinance granting the franchise, does not show *ultra vires.* Such change in mere matter of detail and not vitally changing the nature and object of the franchise, was within the large discretionary powers conferred on the city council. Such exercise of discretionary power made in good faith ought not to be interfered with.

The judgment of the Circuit Court is affirmed.